UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHEASTERN DIVISION

| | |
|---|---|
| VICTORIA NIEMEYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:15-CV-00089-JAR |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Victoria Niemeyer's ("Niemeyer") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.

**I.   Background**

On August 14, 2012, Niemeyer protectively filed an application for disability insurance benefits, alleging a disability onset date of May 18, 2011, due to stress, anxiety, and depression (Tr. 139-147, 203). The Social Security Administration ("SSA") denied Niemeyer's claim on October 23, 2012 (Tr. 85-89). Niemeyer filed a timely request for a hearing before an administrative law judge ("ALJ") on January 22, 2013 (Tr. 90). After a hearing held on April 21, 2014 (Tr. 36-74), the ALJ issued a written decision on June 3, 2014, upholding the denial of benefits (Tr. 18-35). Niemeyer requested review of the ALJ's decision by the Appeals Council

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

(Tr. 16-17). On October 20, 2015, the Appeals Council denied her request for review (Tr. 1-6). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Niemeyer filed this appeal on December 22, 2015 (Doc. 1). The Commissioner filed an Answer (Doc. 11). Niemeyer filed a Brief in Support of her Complaint (Doc. 23), and the Commissioner filed a Brief in Support of the Answer (Doc. 28). Niemeyer did not file a Reply Brief.

**II.     Administrative Record**

The following is a summary of the relevant evidence before the ALJ.

**A.     The Hearing**

At a hearing held in this matter on April 21, 2014, the ALJ heard testimony from Niemeyer, and Denise Waddell, a vocational expert.

**1.     Niemeyer's testimony**

At the time of the hearing, Niemeyer was 60 years old, and living with her husband and 26-year-old son (Tr. 41, 55). She described the symptoms associated with her stress and depression, discussed the medications she had taken for her psychological problems, and explained how she believed her psychological symptoms impacted her ability to maintain full-time employment (Tr. 42-67). She also testified that, while working in a school cafeteria, her knees had started hurting, but that she had not been treated for her knee pain because she did not have insurance (Tr. 45-46, 62). She further testified that her current part-time employer allows her to sit down and take breaks when her knees start hurting (Tr. 62, 67).

## 2. Testimony of the Vocational Expert

The ALJ asked the vocational expert, Denise Waddell, to assume an individual of Niemeyer's age, education, and work history with the ability to perform "a full range of exertional work," but with the following limitation: "limited to performing simple and routine tasks throughout the workday with no more than occasional interaction with supervisors and co-workers which I'll define as cumulatively comprising no more than one third of their workday in . . . a[n] occupation setting where they would not be required to communicate and interact with the general public on behalf of the employer." (Tr. 68-69). Waddell opined that such an individual would be able to work as a linen room attendant, Dictionary of Occupational Titles ("DOT") number 222.387-030, with 530 such jobs available in Missouri, and 38,900 nationally (Tr. 69). Waddell further opined that such an individual would be able to work as a lamination assembler, DOT number 726.687-026, with 850 such jobs in Missouri, and 65,000 nationally (Tr. 69-70). Waddell initially opined that such an individual would also be able to work as an order filler, DOT number 922.687-058, with 3,400 jobs in Missouri and 102,000 nationally; however, she later determined that such employment would be precluded because such an individual would not be able to maintain the necessary production pace (Tr. 70-72). Notably, the ALJ did not include any physical limitations in the hypothetical posed to Waddell, and all three proposed jobs required a "medium" exertional level (Tr. 68-69).

## 3. Counsel's Request for a Consultative X-ray

Counsel summarized Niemeyer's claim, as follows:

This is primarily a mental impairment case. There is a physical impairment I'll mention at the conclusion of my statements, your honor. The claimant has a diagnosis of anxiety, and depression, and inability to cope with stressful situations. Her work history was as a small cafeteria food service employee for approximately 15 years leading up to he[r] onset date of May 2011. The stress, and anxiety, and depression associated with working full time at that job became

3

overwhelming to her. She tried to go back to that job in the fall when school started up again but was able to last only a matter of a few weeks at that job. Since that time she's been capable of only part-time work at a home décor store . . . . It's our contention that because of the claimant's mental impairments and inability to mentally deal with and cope with the rigors and stress of a . . . 40-hour . . . work week that she should be found disabled and approved for benefits. I will mention that the claimant has some right knee pain that she will testify about. This does impact her ability to stand or walk for extended periods of time and it is worse on surfaces, primarily concrete. And the job she did at the school for a number of years was on concrete. Weather also has some impact on that as well. I submit that as well, your honor.

(Tr. 41-42). At the conclusion of the hearing, counsel suggested that it might be appropriate to order a consultative x-ray of Niemeyer's right knee to determine whether it presented a severe impairment, and the ALJ took counsel's request under advisement (Tr. 73).

### B. Medical Records

The ALJ summarized Niemeyer's medical and psychological records at Tr. 27-29. The summary was consistent with the record, and with the parties' statements of undisputed facts submitted to this Court, which the Court hereby adopts and incorporates as if set forth fully herein (Docs. 23 at 2-6; 28.1; 28.2).

### II. Decision of the ALJ

The ALJ determined that Niemeyer meets the insured status requirements of the Social Security Act through December 31, 2017, and has not engaged in substantial gainful employment since May 18, 2011, the alleged onset date of disability (Tr. 23). The ALJ found that Niemeyer had the severe impairments of anxiety and depression, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23-25). The ALJ determined that Niemeyer had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels" but with the following non-exertional limitations: only simple and routine

tasks throughout the workday; no more than occasional (one third of the workday) interaction with supervisors and coworkers; and an occupational setting with no interaction with the public on behalf of her employer (Tr. 25-29). The ALJ further found that Niemeyer's psychological impairments prevented her from returning to her past work; however, based on her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, including linen room attendant, lamination assembly, and order filler (Tr. 29-30). The ALJ noted that all three of these positions require a medium exertional level (Tr. 30). Thus, the ALJ concluded that Niemeyer had not been under a disability from the alleged onset date of May 18, 2011 through the date of his decision, June 3, 2014 (Id.). The ALJ's decision was silent on the issue of whether Niemeyer's right knee pain presented a severe impairment, the ALJ did not explicitly consider whether Niemeyer's right knee pain might impair her ability to perform at the medium exertional level required of the jobs Waddell identified, the ALJ did not order a consultative x-ray before issuing his decision, and the ALJ did not expressly determine that the administrative record had been fully and fairly developed without the need for a consultative x-ray of Niemeyer's right knee.

**IV.    Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at *2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering her age, education, and work experience, engage in any other kind of

5

substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. §

404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that she is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

7

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

**V.     Discussion**

In her appeal of the Commissioner's decision, Niemeyer argues that the ALJ failed to fully and fairly develop the record by not ordering a consultative x-ray of her right knee. According to Niemeyer, the ALJ could not make an informed decision on her application for disability benefits without an x-ray of her right knee. Niemeyer notes that, while the ALJ discussed her psychological conditions at length, there is no mention of her knee pain in the ALJ's decision. Thus, Niemeyer argues, it is unclear whether the ALJ found her complaints of knee pain to not be credible, or whether the issue was simply overlooked (Doc. 23).

The Commissioner urges affirmance, arguing that the ALJ fairly developed the record despite Niemeyer's hearing testimony about her knee pain. In the Commissioner's view, the ALJ properly declined to order additional testing because there was ample evidence in the record to demonstrate that her knee pain was not a severe impairment. Specifically, the Commissioner notes that Niemeyer did not report knee pain on any of the documents she submitted with her application, that she first disclosed her knee pain at the hearing, that she has not been medically

treated for knee pain, and that other evidence in the record contradicts her reports of disabling knee pain, e.g., her testimony that she takes walks to alleviate her anxiety and stress (Doc. 28).

When a claimant alleges disabling pain, the ALJ must consider the "Polaski factors," which include the "claimant's prior work history; daily activities; duration, frequency, and intensity of the pain; dosage, effectiveness, and side effects of medications; precipitating and aggravating factors; and functional restrictions." O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003); see also Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ need not explicitly discuss each Polaski factor; however, the ALJ must acknowledge and consider the factors before discrediting a claimant's pain complaints. Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The absence of objective medical evidence in support of a claimant's pain complaints may also be a relevant factor, but the ALJ may not discount a claimant's allegations of disabling pain solely because the available objective medical evidence does not fully support the allegations. Id.; Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (citing O'Donnell, 318 F.3d at 816). The ALJ may disbelieve subjective pain complaints where there are inconsistencies in the evidence as a whole. Goff, 421 F.3d at 792 (citing Strongson, 361 F.3d at 1072). "When an ALJ rejects a claimant's complaints of pain, he or she must make an express credibility determination detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the Polaski factors." Kelley v. Callahan, 133 F.3d 583, 588 (8th Cir. 1998) (citing Cline v Sullivan, 939 F.2d 560, 565 (8th Cir. 1991)). Where an ALJ has considered, but for good cause, expressly discredited a claimant's complaints of disabling pain, the decision will not be disturbed on appeal. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).

Here, the ALJ did not address the issue of whether Niemeyer's knee pain was a severe impairment, and this Court may not independently weigh the Polaski factors to resolve the issue

on appeal. See Howe v. Astrue, 499 F.3d 835, 839 (8th Cir. 2007) ("[I]t is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue[s] de novo."). The Court cannot draw any conclusion or inference from the ALJ's silence on this issue. The Court will therefore remand this matter for the ALJ to determine, in the first instance, whether Niemeyer's knee pain would have more than a de minimis impact on her ability to work, applying the Polaski factors, see Page, 484 F.3d at 1043; and to order a consultative x-ray of her right knee should the ALJ find that the record is not adequately developed to allow such a determination in the absence of such testing, see Strongson, 361 F.3d at 1071-72 (the ALJ's duty to develop the record fully and fairly includes the responsibility of ensuring that the record includes evidence from a treating physician, or at least an examining physician, addressing the particular impairments at issue). In remanding this action back to the Commissioner, the Court expresses no opinion as to whether Niemeyer has established on the current record that her knee pain is a severe impairment, or as to whether a consultative x-ray will be necessary to fairly develop the record on remand. Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (an ALJ is not required to order a consultative evaluation of every alleged impairment; rather, the ALJ is authorized to do so if the existing medical sources do not contain sufficient evidence to make a determination).

**VI.      Conclusion**

For the aforementioned reasons, the Court finds that the ALJ erred by failing to make a finding on the issue of whether Niemeyer's right knee pain was a severe impairment. This case must, therefore, be remanded. On remand, the ALJ is directed to consider and to make an express finding on the issue of whether Niemeyer's right knee pain is a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii).

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

Dated this 28th day of March, 2017.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**